UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY MOODY et al.,

        Plaintiffs,                          Case No. 24-cv-10120

v.                                         HON. MARK A. GOLDSMITH

RUSSELL GARTHA et al.,

        Defendants.

_____/

**OPINION & ORDER**
**GRANTING DEFENDANTS' MOTION TO DISMISS (Dkt. 16)**

Plaintiffs Jerry and Tracey Moody, a married couple, bring this action against Defendant police officers Russell Gartha, Harrison Higgins, C. Karinen, M. Fair, and S. Bond (Defendant Officers), as well as the City of Southfield (collectively, Defendants), alleging violations of Jerry's constitutional rights during an incident that occurred on December 15, 2022. Before the Court is Defendants' motion to dismiss (Dkt. 16).[1] For the reasons that follow, the Court grants the motion.

## I.     BACKGROUND

The Moodys' amended complaint alleges the following facts. On December 15, 2022, Jerry was driving a black Dodge Journey at the same time as officers were looking for a homicide suspect reported to be driving a black Dodge Journey on the same road. Am. Compl. ¶¶ 10, 16 (Dkt. 14). The suspect was described as a Black male with braids whose name was Anthony Rutherford and whose partial license plate read "DMM." Id. ¶ 17. Jerry matched the description

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The briefing also includes the Moodys' response (Dkt. 20) and Defendants' reply (Dkt. 23).

of the suspect only in that he is also Black; his hair was not braided, and his license plate did not match the suspect's.  Id. ¶¶ 14, 15.  Jerry kept his vehicle in control, did not cross the yellow line, and was not driving erratically.  Id. ¶ 13.  After the Defendant Officers saw Jerry's car, Karinen initiated a traffic stop and Gartha boxed in Jerry's vehicle by striking the front bumper of Jerry's vehicle with the police vehicle.  Id. ¶ 19.

After Gartha struck Jerry's vehicle, Gartha and Karinen exited their vehicles, threatened Jerry at gunpoint, and ordered Jerry out of his vehicle.  Id. ¶¶ 20–22.  They did not ask for Jerry's identification.  Id.  After ordering Jerry out of his vehicle, Fair, Karinen, and Bond forced Jerry face down onto the wet pavement and handcuffed him with his hands behind his back, using two pairs of handcuffs.  Id. ¶¶ 24–25.  The Defendant Officers searched Jerry's clothing.  Id. ¶ 26.

Eventually, Jerry was correctly identified as Jerry Moody, not the suspect.  Id. ¶ 27.  At about the same time that Jerry was stopped, the U.S. Marshals Service and another officer from the Detroit Police Department, Officer Cazann, stopped the correct black Dodge Journey that they were looking for, roughly one-half mile south of where Jerry was stopped.  Id. ¶¶ 30–32.

Jerry experienced an anxiety attack and the Southfield Life Unit rendered aid.  Id. ¶ 29.  He then went to a care center to be evaluated by a doctor.  Id. ¶¶ 41–42.  During the doctor's examination, Jerry complained of neck pain and the doctor observed bruising and an abrasion on Jerry's knees.  Id. ¶¶ 43–45.  Jerry reported to the doctor "that he was fearful for his life and was afraid that he was not going to make it out of the situation."  Id. ¶ 45.  Since the incident, Jerry has continued to be treated for anxiety, depression, and post-traumatic stress disorder.  Id. ¶ 48.

## II.     ANALYSIS

The Moodys bring a federal claim pursuant to 18 U.S.C. § 1983 for violations of the Fourth Amendment, as well as state-law claims for assault, battery, gross negligence, false arrest, false

2

imprisonment, loss of consortium, and violations of the Michigan Constitution.[2]  Id. ¶¶ 57–86.

The Court first addresses the Moodys' federal claim, finding that it must be dismissed with

prejudice because the Moodys have failed to plead that they suffered a constitutional harm.[3]  The

Court then declines to exercise supplemental jurisdiction over the Moodys' state-law claims and

dismisses the state-law claims without prejudice.

### A. Federal Claims

#### 1. Defendant Officers

The Moodys sue the Defendant Officers in their official and individual capacities.  Claims

against officers in their official capacities are treated as claims against the entity for which the

officers are agents, Briner v. City of Ontario, 370 F. App'x 682, 699 (6th Cir. 2010), in this case

the City.  Because the Moodys already bring the same claims against the City, the Court dismisses

the Moodys' claims against the Defendant Officers in their official capacities in order to avoid

duplicative claims.  As for the Moodys' claims against the Defendant Officers in their individual

capacities, Defendants argue that the claims should be dismissed because they are entitled to

qualified immunity.  Mot. at 9–16.

---

[2] The Moodys initially brought claims for violations of the Fifth, Ninth, and Fourteenth Amendments as well, but they withdrew these claims in their response to Defendants' motion to dismiss. See Resp. at 8.  The Moodys also contend that their complaint brought federal and state-law claims for loss of consortium, but they have since withdrawn the federal claim. Id. at 9.

[3] To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007).  The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. Id.

"To survive [a] motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that plausibly make out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right."  Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016) (punctuation modified).  The Court applies a two-step inquiry.  "The initial inquiry is whether a constitutional right would have been violated on the facts alleged, for if no right would have been violated, there is no need for further inquiry into immunity."  Saucier v. Katz, 533 U.S. 194, 194 (2001).  The Court finds that the facts alleged by the Moodys, taken as true, do not establish that the Defendant Officers violated their Fourth Amendment rights.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.  Its protections extend to "brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002).  Defendants do not seem to dispute that, as alleged, Jerry was the subject of a search and seizure. Mot. at 10–11.  Instead, Defendants argue that the Defendant Officers' actions during the search and seizure were objectively reasonable and did not violate the Fourth Amendment.  Id. (citing Graham v. Connor, 490 U.S. 386, 397 (1989)). The Court agrees.

To be constitutional under the Fourth Amendment, the Defendant Officers' actions must have been objectively reasonable in light of the facts and circumstances confronting them. Graham, 490 U.S. at 397.  The standard is objective.  Id.  "[T]he question is whether the officers' actions [were] objectively reasonable . . . without regard to their underlying intent or motivation." Id. (punctuation modified).  Further, "[r]easonable does not mean vindicated by hindsight." Ashford v. Raby, 951 F.3d 798, 801 (6th Cir. 2020).  "Nor does it mean only the best technique

4

available at the time." Id.  The Sixth Circuit has advised that, "[i]n police work, officers usually face a range of acceptable options, not a single, rigid right answer." Id.  "The reasonableness standard thus contains a built-in measure of deference to the officer's on-the-spot judgment." Id. (punctuation modified).

The Moodys argue that the actions of the Defendant Officers were unreasonable because a different officer, "acting upon the same information provided to the [Defendant Officers]," pursued and stopped the correct black Dodge Journey—the one containing the homicide suspect— instead of stopping Jerry.  Resp. at 5–6.  According to the Moodys, Officer Cazann was directly behind a police car driven by one of the Defendant Officers when that car made a U-turn to follow Jerry's vehicle.  Id. at 5.  With the leading police car driven by a Defendant Officer out of the way, Cazaan "could clearly see the flashing police lights ahead from numerous police vehicles which had stopped the [correct] suspect vehicle."  Id.  "The [Defendant Officer driving the lead police car] would have had the same view ahead of the flashing lights indicating a police incident."  Id. "Officer Cazan[n] saw no reason to change course and to pursue Mr. Moody's vehicle since there was no reason to suspect Mr. Moody's vehicle was the suspect vehicle, especially since it wasn't being followed by any police officers."  Id.

But just because a different officer may have made a smarter or more appropriate decision than the Defendant Officers does not mean that the Defendant Officers' conduct was unreasonable. Officers can conduct an investigatory stop "if the officers have a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officers lack probable cause." United States v. Sokolow, 490 U.S. 1, 2 (1989) (punctuation modified).  That standard was certainly met here.  While it was unfortunate for Jerry, the fact remains that he was driving the same make and color vehicle as the homicide suspect on the same street where the suspect was

5

reported.  The Defendant Officers stopped Jerry's vehicle based on those articulable facts.  Their suspicion was not an "inchoate" or "unparticularized" hunch, as the Moodys contend, Resp. at 7.

Even though Jerry's license plate was different than the suspect's, it was reasonable for the Defendant Officers, in the heat of pursuit, to conduct an investigatory stop of Jerry's vehicle before confirming the exact license plate.  "[T]he reasonableness of [] seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers."  United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975).  Homicide—the suspect's alleged crime—is a most serious offense.  It is reasonable that officers would want to be thorough in their active pursuit for the suspect, including by stopping any vehicles matching the description of the suspect's car on a particular road, in order to protect the public.

The Moodys argue that "a description that applies to large numbers of people will not justify the seizure of a particular individual," and that "this is especially true where the description is based primarily on race and sex."  Resp. at 7.  But this fails to appreciate the description of the suspect that the Defendant Officers were given, which included not only race, but the make and color of the suspect's car.  The Court finds it unlikely that "a large number of people" were driving a black Dodge Journey on a particular road at the exact time the Defendant Officers were pursuing the suspect.  The Defendant Officers' actions, in light of the circumstances, were reasonable.

Since the Court finds that the Moodys have not stated a claim for a constitutional violation, the Court does not need to address the "clearly established" step of the qualified immunity inquiry.  But even if the Court were to proceed to the second step, the Moodys do not explain why any supposed violation was clearly established.

6

A right is clearly established "if its contours are definite enough that any reasonable official in the defendant's shoes would have understood that he was violating it." Jones v. Naert, 121 F.4th 558, 567 (6th Cir. 2024).  This usually requires the plaintiff to identify a case where an officer acting under similar circumstances was found to have violated the constitution.[4]  See, e.g., D.C. v. Wesby, 583 U.S. 48, 64 (2018) (explaining that "specificity . . . is especially important in the Fourth Amendment context" and stressing "the need to identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment") (punctuation modified); Colson v. City of Alcoa, Tennessee, 37 F.4th 1182, 1189 (6th Cir. 2022) (holding that the clearly-established standard required the plaintiff to "identify a case that addresses facts like the ones at issue . . .") (punctuation modified).

The Moodys' amended complaint includes the conclusory allegation that "Jerry Moody[] had constitutional rights to be free from unlawful detention, unlawful seizure, unlawful arrest, unlawful imprisonment, unlawful restraint, unlawful searches and these constitutional rights were clearly established in the Sixth Circuit and elsewhere when Defendants violated Plaintiff's aforesaid constitutional rights."  Am. Compl. At 13.  Similarly, the Moodys' response states that "Mr. Moody's right to travel, his right to be free from unreasonable detention, his right to be free from unreasonable search and seizure while comporting himself as a lawabiding (sic) citizen, are well-established principles embedded in our Constitution."  Resp. at 12.  The Moodys' discussion of their Fourth Amendment claim in their response does not cite to a single authority addressing facts similar to the present case.  Id. at 6–8.  The Moodys' conclusory allegations are not enough to show that a right was clearly established.

---

[4] A plaintiff may also show that a claim presents "one of those rare obvious cases where no existing precedent is needed."  See Jones, 121 F.4th at 568 (punctuation modified).  The Moodys do not argue, and the Court does not find, that the Moodys' claim presents such a "rare obvious" case.

For these reasons, the Moodys' federal claims against the Defendant Officers are dismissed.

### b. City of Southfield

Because the Moodys' federal claims against the Defendant Officers fail, their federal claims against the City of Southfield fail as well.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (holding that there is no Monell liability for municipality based on the actions of its officers when the officer did not inflict a constitutional harm).

## B. State-Law Claims

With the Moodys' federal claims being dismissed, the Court declines to exercise supplemental jurisdiction over their state-law claims.  See 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–727 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").  The Court instead dismisses the Moodys' state-law claims without prejudice.

## III.    CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion to dismiss in its entirety (Dkt. 16).  The Moodys' federal claims are dismissed with prejudice.  Their state-law claims are dismissed without prejudice.

SO ORDERED.